

# In the
# Missouri Court of Appeals
## Western District

ISRAEL IVAN RAMIREZ,   )
             )
    Respondent,   )  WD79297
             )
v.           )  OPINION FILED:  July 26, 2016
             )
MISSOURI DEPARTMENT OF  )
SOCIAL SERVICES, CHILDREN'S )
DIVISION,        )
             )
    Appellant.    )

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Division Two:  Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

The Missouri Department of Social Services, Children's Division ("Division") appeals from a trial court judgment which held that Israel Ivan Ramirez ("Ramirez") did not sexually abuse a student, and which declared that the Division's definition of "sexual maltreatment" in its Child Welfare Manual is an invalid rule, authorizing Ramirez to prosecute a claim for attorney's fees in accordance with section 536.050.  We reverse that portion of the judgment from which the Division has taken this appeal.

**Factual and Procedural Background**

Prior to June 2014, Ramirez was employed as an art teacher in the Pettis County R-12 School District. The Division received a report on April 18, 2014, claiming that Ramirez sexually abused a student. On May 20, 2014, the Division's investigator found that Ramirez had sexually abused the student. On June 4, 2014, Ramirez filed a request for administrative review. On June 19, 2014, the Division completed its administrative review of the investigation and determined that Ramirez sexually abused a student. The June 19, 2014 letter advised Ramirez that his matter had been referred to the Child Abuse Neglect Review Board ("CANRB") for further review.

Pursuant to section 536.100(2),[1] Ramirez waived independent review by CANRB, and instead filed a petition in the Circuit Court of Cole County for *de novo* judicial review of the Division's decision.[2] In his petition filed June 30, 2014, Ramirez alleged that he did not engage in sexual abuse, and that the Division used an unlawful legal standard for determining sexual abuse by relying on the definition of "sexual

---

[1]All statutory references are to RSMo 2000, as supplemented through June 2014, except as otherwise noted.

[2]Section 536.100(2) provides, in pertinent part, that "[i]n cases, whether contested or not, where the law provides for an independent review of an agency's decision by a board other than the administrative hearing commission and further provides for a de novo review of the board's decision by the circuit court, a party aggrieved by the agency's decision may, within thirty days after it receives notice of that decision, waive independent review by the board and instead file a petition in the circuit court for the de novo review of the agency's decision. The party filing the petition under this section shall be considered to have exhausted all administrative remedies." The administrative proceedings in this case were uncontested proceedings. *See Goines v. Missouri Department of Social Services*, 364 S.W.3d 684, 688 (Mo. App. W.D. 2012) (citing *Lipic v. Missouri Department of Social Services*, 93 S.W.3d 839, 842 (Mo. App. E.D. 2002)). They nonetheless fall within the above referenced provision of section 536.100(2). *See* sections 210.152.3, .4, and .5. Thus, although *de novo* judicial review of uncontested administrative agency decisions is ordinarily conducted pursuant to section 536.150, here *de novo* judicial review was authorized by section 536.100(2).

2

maltreatment"[3] in its Child Welfare Manual.  Ramirez sought removal of his name from the Central Registry,[4] and an award of attorneys' fees.

In a second amended petition filed August 4, 2015,[5] Ramirez essentially repeated in Count I the allegations from his original petition, though he added reference to *Birdsong v. Children's Division, Missouri Department of Social Services*, 461 S.W.3d 454, 458 n. 6, 462 n. 14 (Mo. App. W.D. 2015), where we observed that the definition of "sexual maltreatment" in the Child Welfare Manual is not found in any statute or promulgated rule or regulation, and where we counseled against future reliance on the definition, absent its adoption in a statute or duly promulgated regulation.  Count I of the second amended petition specifically alleged that the Division unlawfully relied on the Child Welfare Manual definition of "sexual maltreatment" to conclude that he had engaged in sexual abuse.

The second amended petition added Count II requesting a "declaratory judgment pursuant to section 536.050.1" that the definition of "sexual maltreatment" in the Division's Child Welfare Manual is an invalid rule, and seeking a commensurate award of attorney's fees.[6]

---

[3]The parties and the trial court refer to a definition of "sexual abuse" in the Child Welfare Manual.  In fact, the term used in the Child Welfare Manual is "sexual maltreatment."  We thus use the term "sexual maltreatment" in this opinion when referring to the definition in the Child Welfare Manual.

[4]"The Central Registry is a statewide child abuse and neglect registry maintained by the division as part of Missouri's efforts 'to promote the safety of children . . . [by] providing services in response to reports of child abuse or neglect.'"  *Jamison v. State, Dept. of Social Services, Div. of Family Services*, 218 S.W.3d 399, 403 (Mo. banc 2007) (quoting section 210.109.2, RSMo Supp. 2006).

[5]A proposed first amended petition was withdrawn.

[6]Section 536.050.3 provides that "[a] nonstate party who prevails in an action pursuant to subsection 1 of this section shall be awarded reasonable fees and expenses, as defined in section 536.085, incurred by that party in the action."

3

The Division filed an answer to the second amended petition, and denied that it relied on the definition of "sexual maltreatment" from the Child Welfare Manual to find that Ramirez engaged in sexual abuse of a student. The Division's answer admitted, however, that the Child Welfare Manual, (including the definition of "sexual maltreatment"), had not been promulgated as a rule.

Following trial to the court on August 24, 2015, the trial court entered its findings of fact, conclusions of law and judgment on December 4, 2015 ("Judgment"). The Judgment made the following factual findings pertinent to this appeal: (i) that Ramirez did not exercise care, custody, or control over the student, and had no direct supervisory responsibility for the student; (ii) there was no credible evidence that Ramirez intentionally began an inappropriate Snapchat[7] conversation with a student, or that Ramirez was initially aware that the Snapchat account he was communicating with was a student;[8] (iii) no credible evidence was presented of any adverse impact to the student as a result of the Snapchat conversation; (iv) that the Child Welfare Manual is an internal policy manual utilized by the Division; (v) that the Division based its finding that Ramirez sexually abused a student on the definition of "sexual maltreatment" in the Child Welfare Manual; (vi) that the definition of "sexual maltreatment" in the Child Welfare Manual is a statement of general applicability with prospective application; and (vii) that the Division did not promulgate its definition of "sexual maltreatment" as a rule.

---

[7]Snapchat is "an image messaging . . . application." https://en.wikipedia.org/wiki/Snapchat. Images, or "snaps" "can be viewed for a user-specified length of time (1 to 10 seconds) before they become inaccessible." *Id*.
[8]The Snapchat account Ramirez was communicating with used the identification of "Mr. Love Muscles."

The Judgment drew the following legal conclusions pertinent to this appeal: (i) that based on the statutory definition of "abuse" set forth at section 210.110(1),[9] Ramirez did not engage in sexual abuse; and (ii) that the Division's actions against Ramirez were unlawfully based upon an unpromulgated rule.

The Judgment thus ordered: (i) that Ramirez be removed from the Central Registry and that any other records relating to the incident be coded as unsubstantiated; (ii) that the Division's definition of "sexual maltreatment" in the Child Welfare Manual "is an invalid rule and may not be relied upon by [the Division] in making determinations of sexual abuse;" (iii) that Ramirez's claim for attorney's fees for prevailing on Count I of the second amended petition were denied because the Division's action was not a contested case; and (iv) that Ramirez's[10] claim for attorney's fees for prevailing on Count II could be prosecuted "in accordance with the procedures of section 536.050."[11]

The Division filed this timely appeal.

## Analysis

The issue on appeal is very narrow. The Division has not appealed *any* of the trial court's factual findings. Moreover, the Division has not appealed *most* of the trial court's legal conclusions. The Division leaves unchallenged the findings and conclusions: that Ramirez did not sexually abuse a student based on the statutory definition of "abuse" set

---

[9]"Abuse" is defined as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse." Section 210.110(1).

[10]The Judgment mistakenly uses the term "Respondent" instead of "Ramirez" in addressing the right to recover attorney's fees. It is plain that this is a typographical error.

[11]A motion for attorney's fees has been filed by Ramirez and is pending in the trial court. By statute, the pending motion does not affect the finality of the Judgment for purposes of appeal. Section 536.050.5.

forth at section 210.110(1);[12] that the definition of "sexual maltreatment" in the Child Welfare Manual is a statement of general applicability that should have been promulgated as a rule; that the Division unlawfully relied on an unpromulgated rule defining "sexual maltreatment" to find that Ramirez sexually abused a student; that judgment should be entered in favor of Ramirez on Count I of the second amended petition; and that Ramirez's name should be removed from the Central Registry.[13]

The only challenge to the Judgment raised by the Division on appeal is whether the trial court had the authority to enter a declaratory judgment in Ramirez's favor on Count II of the second amended petition declaring the definition of "sexual maltreatment" in the Child Welfare Manual to be an invalid rule. The Division's first point on appeal argues that the trial court had no authority to enter a declaratory judgment pursuant to section 536.050 because that statute applies only to promulgated rules. The Division's second point on appeal argues that the trial court had no authority to enter a declaratory judgment pursuant to section 527.010 because Ramirez had an adequate remedy at law.

To be clear, the Division's points on appeal do not challenge the findings the trial court necessarily relied on to enter its declaratory judgment. In other words, the Division does not contend that it was error to find that the Division relied on the definition of "sexual maltreatment" in the Child Welfare Manual when it determined that Ramirez

---

[12]We have thus elected not to describe further details of the incident giving rise to the Division's investigation, as they are immaterial to this appeal.

[13]Ramirez did not file a cross appeal challenging the trial court's denial of an award of attorney's fees for prevailing on Count I. Division and CANRB decisions finding sexual abuse warranting placement on the Central Registry are not contested cases, a requirement pursuant to section 536.087 for an award of attorney's fees following a section 536.100 review proceeding. *See Birdsong v. Children's Division, Missouri Department of Social Services*, 461 S.W.3d 454, 458 (Mo. App. W.D. 2015).

sexually abused a student, or to find that said definition should have been promulgated as a rule. Though these uncontested findings were essential to the trial court's entry of a declaratory judgment on Count II of the second amended petition, the findings were also responsive to allegations made in Count I of the second amended petition, and thus also serve to support the unchallenged judgment entered in favor of Ramirez on Count I.

The *only* issue before us is whether the trial court had the statutory authority to rely on the aforesaid uncontested findings to award Ramirez declaratory relief, and thus to award Ramirez attorney's fees. We analyze the Division's points on appeal accordingly.

## Standard of Review

We review the trial court's authority to enter a judgment on Count II of the second amended petition as in any court tried matter. "The judgment of the trial court will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012) (quoting *White v. Director of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (other citation omitted)). Because the trial court's statutory authority to enter a declaratory judgment involves a question of law, we apply *de novo* review to the issues on appeal. *Id*. (citing *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 899 (Mo. banc 2006)).

## Point One

The Division's first point on appeal argues that the trial court had no authority to award declaratory relief pursuant to section 536.050 because no promulgated rule was at issue. Section 536.050.1 provides, in pertinent part, as follows:

> The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments *respecting the validity of rules*, or of threatened applications thereof, and such suits may be maintained against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented.

[Emphasis added.] A "rule" is defined by section 536.010(6) as "each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency." Section 536.021.1 provides that "[n]o rule shall hereafter be proposed, adopted, amended, or rescinded by any state agency" without first complying with the rulemaking procedure therein set forth. In other words, a "rule" as envisioned by section 536.050.1 is a statement of agency policy that falls within the statutory definition of "rule" *and* that has been promulgated as a rule.

The trial court found, and the Division does not contest, that the definition of "sexual maltreatment" in the Child Welfare Manual was required to be promulgated as a "rule." In other words, the definition was a statement of general applicability interpreting the law or policy of the agency. However, the trial court found, and the Division does not contest (and, in fact, admitted in its answer), that the definition of "sexual maltreatment" in the Child Welfare Manual was never promulgated as a rule. As a result, the definition of "sexual maltreatment" could not be lawfully relied on by the Division to determine whether sexual abuse had occurred. The question presented here is whether an agency

8

statement of policy that ***should*** have been promulgated as a rule is within the intended scope of the phrase "respecting the validity of rules" as to support a declaratory judgment action pursuant to section 536.050.

Our Missouri Supreme Court has addressed and resolved this very issue. Declaratory relief pursuant to section 536.050 is not available to dispute the validity of a rule unless "a plaintiff can 'plead and establish … facts that a promulgated rule was the basis of the [agency's] action.'" *Missouri Ass'n of Nurse Anesthetists, Inc. v. State Bd. of Registration for the Healing Arts*, 343 S.W.3d 348, 353 (Mo. banc 2011) (quoting *United Pharmacal Co. of Missouri Inc. v. Missouri Bd. of Pharmacy*, 159 S.W.3d 361, 367 (Mo. banc 2005)).  Simply stated, "[t]he question of validity [of a rule pursuant to section 536.050], . . . presupposes the existence of a promulgated rule, or at least, a rule that purports to have been promulgated."  *United Pharmacal*, 159 S.W.3d at 366.  This construction of section 536.050 is reinforced by section 536.053, which provides that "[a]ny person who is or may be aggrieved by any rule *promulgated* by a state agency shall have standing to challenge any rule *promulgated* by a state agency and may bring such an action pursuant to the provisions of section 536.050."  *Id.* (quoting section 536.053) (emphasis in original).

Thus, "[t]here simply cannot be a suit [pursuant to section 536.050] regarding an administrative rule's statutory authority, conflict with state law, or arbitrary and capriciousness when there was never a rule promulgated or an attempt to promulgate a rule."  *Id.*; *see also Missouri Ass'n of Nurse Anesthetists*, 343 S.W.3d at 353 ("Because there is no promulgated rule at issue here, or at least a rule that purports to have been

9

promulgated, section 536.050 is not applicable.").  In other words, section 536.050 cannot be employed to seek a declaration that an agency's statement of policy is unlawful because it is a statement of general applicability interpreting the law or policy of the agency that should have been promulgated as a rule.[14]

In this case, the trial court found that the Division made no attempt to promulgate the definition of "sexual maltreatment" in the Child Welfare Manual as a rule, though it should have done so, because the definition of "sexual maltreatment" falls within the statutory definition of "rule" set forth in section 536.010(6).[15]  Because no promulgated rule or attempted promulgated rule was at issue in this case, the trial court had no authority pursuant to section 536.050 to enter a declaratory judgment in Ramirez's favor on Count II of the second amended petition, or to authorize Ramirez to pursue a claim for attorney's fees in accordance with section 536.050.3.

Point one on appeal is granted.

## Point II

The Division's second point on appeal argues that the trial court had no authority to award declaratory relief pursuant to section 527.010 because Ramirez had an adequate remedy at law--the administrative remedies he was pursuing under section 536.100(2).

---

[14] "'Only rules promulgated by an administrative agency with properly delegated authority have the force and effect of law.'"  *United Pharmacal Co. of Missouri Inc. v. Missouri Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. banc 2005) (quoting *Psychare Mgmt., Inc. v. Dept. of Soc. Serv. Div. of Med. Serv.*, 980 S.W.2d 311, 313-14 (Mo. banc 1998)).

[15] As previously noted, it was not erroneous for the trial court to make these uncontested findings, as they are independently relevant to support the trial court's entry of judgment in favor of Ramirez on Count I of the second amended petition where Ramirez alleged that the Division unlawfully relied on a definition of "sexual maltreatment" that should have been promulgated as a rule to find that he sexually abused a student.

Section 527.010, Missouri's Declaratory Judgment Act, affords Missouri courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Though Count II of the second amended petition did not expressly seek a declaratory judgment pursuant to section 527.010, and though the Judgment does not mention section 527.010, section 536.050.1 expressly provides that "[n]othing herein contained shall be construed as a limitation on the declaratory or other relief which the courts might grant in the absence of this section." Thus, though declaratory relief was not authorized pursuant to section 536.050.1, we must alternatively analyze whether the trial court's entry of a declaratory judgment in Ramirez's favor was authorized pursuant to section 527.010. *Hudson v. UMB Bank, N.A.*, 447 S.W.3d 714, 718 (Mo. App. W.D. 2014) ("We are to affirm the trial court's judgment [in a court tried case] on any basis supported by the law and the facts of the case.").

The Missouri Supreme Court addressed the relationship between section 536.050 and section 527.010 in *Missouri Ass'n of Nurse Anesthetists*. There, a doctor and advanced nurse practitioners ("ANP's") sought a declaration that a letter from the Board of Registration for the Healing Arts, which opined that certain pain management services could not be delegated by doctors to ANP's, was void as an unpromulgated rule. 343 S.W.3d at 352. As in the case before us, the Board admitted in its answer that the letter had not been promulgated as a rule. *Id*. at 352-53. After explaining that declaratory relief pursuant to section 536.050 was not available to either the doctor or the ANP's because no promulgated rule was at issue, the Supreme Court considered whether declaratory relief was available pursuant to section 527.010. *Id.* at 353-56.

11

"To grant a declaratory judgment, the court must be presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake . . . ; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law."

*Id.* at 353-54 (quoting *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003)).

Here, the Division challenges only Ramirez's alleged failure to demonstrate that his administrative remedies afforded him an inadequate remedy at law. When a party seeks a section 527.010 declaration that an agency's statement of policy falls into the statutory definition of "rule" and should have been promulgated as a rule, the determination of whether an administrative remedy provides an adequate remedy at law depends first on whether the agency has authority over the party threatened[16] by the policy. If a party threatened by an agency's statement of policy is not subject to the agency's authority, then the party has no administrative remedy (and thus no adequate remedy at law), and can challenge whether the policy is void as an unpromulgated rule in a section 527.010 declaratory judgment action. *Id*. at 355-56. (holding that because "ANP's, though sufficiently impacted by the Board's letter, are not subject to the authority of the Board . . . [they] have no administrative remedy available to challenge the Board's letter," and could pursue declaratory relief pursuant to section 527.010 to determine if the letter was void as an unpromulgated rule).

---

[16]Whether a party is threatened by an agency's statement of policy is relevant to establishing whether a party has a legally protectable interest that is ripe for judicial determination, two other elements essential to the right to seek section 527.010 declaratory relief that are not at issue in this case. *Missouri Ass'n of Nurse Anesthetists*, 343 S.W.3d at 354-55.

In contrast, where agency action is threatened against a party who is subject to an agency's authority, that party ordinarily has an adequate remedy at law. *Id*. at 356. A party subject to an agency's authority can challenge whether an agency's statement of policy is void as an unpromulgated rule as a part of judicial review of an agency decision or disciplinary proceeding that relies on, or seeks to enforce, the policy. *Id*.

There is a limited exception to this general rule. "'[W]here the applicable administrative procedure must be commenced by the agency and the agency has failed to commence any proceeding[,] [a] party threatened by agency action may invoke the court's jurisdiction to grant declaratory judgment against the agency.'" *Id*. at 355 (quoting *Farm Bureau Town & Country Ins. Co. of Missouri v. Angoff*, 909 S.W.2d 348, 354 (Mo. banc 1995). In other words, a party subject to the authority of an agency and threatened by an agency's statement of policy is not be required to wait indefinitely for disciplinary proceedings to be commenced, at risk that continued conduct contrary to the policy may yield discipline. *Id*.

Applying this exception to the general rule, the Supreme Court held in *Missouri Ass'n of Nurse Anesthetists* that a section 527.010 declaratory judgment action initiated by the doctor threatened by the Board's letter could proceed, even though the doctor was subject to the Board's authority, and even though the Board initiated disciplinary proceedings against the doctor, because the disciplinary proceedings were not initiated until four and a half months *after* the doctor's declaratory judgment action was filed. *Id*. In contrast, however, in *Angoff*, the Supreme Court held that where threatened agency action was initiated "approximately 30 days [after] the filing of [a] declaratory judgment

13

action," the continued pursuit of the declaratory judgment action was prohibited because of the exhaustion of remedies doctrine. 909 S.W.2d at 354.

Here, Ramirez was subject to the Division's authority. The general rule that Ramirez thus had an adequate remedy at law applies to Ramirez's circumstances. Ramirez was first threatened by the Division's definition of "sexual maltreatment" in the Child Welfare Manual when the Division relied on that definition to find that Ramirez sexually abused a student. Ramirez exercised his administrative remedy to challenge the Division's decision by filing an action pursuant to section 536.100(2) seeking *de novo* judicial review. As a part of that administrative remedy, Ramirez alleged that the Division's decision was unlawful because the Division relied on a definition that had not been promulgated as a rule. Ramirez had an adequate remedy at law--his section 536.100(2) action--wherein he could argue that the Division's definition of "sexual maltreatment" should have been promulgated as a rule. The trial court was not authorized to afford Ramirez that same determination by way of a declaratory judgment pursuant to section 527.010. In fact, Ramirez did not even seek leave to file his second amended petition to add Count II seeking a declaratory judgment until just weeks before trial, underscoring that the general rule that parties subject to an agency's authority have an adequate administrative remedy at law, and not the exception to that rule, applies to this case.

14

The trial court's entry of a declaratory judgment in favor of Ramirez on Count II of the second amended petition, and the corresponding award of attorney's fees, cannot be affirmed pursuant to section 527.010.[17]

Point two is granted.

## Conclusion

The trial court's Judgment in favor of Ramirez on Count II of the second amended petition, and the corresponding award of attorney's fees, is reversed.[18]

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

---

[17]Even if the trial court's entry of judgment on Count II of the second amended petition could be affirmed pursuant to section 527.010, which it cannot, we cannot say that the corresponding award of attorney's fees would have been affirmed. Unlike a section 536.050 declaratory judgment action where the recovery of attorney's fees is mandated, attorney's fees are not automatically recoverable in a section 527.010 declaratory judgment action, and are only recoverable as "costs" authorized by section 527.010 where warranted by very unusual circumstances. *See Clark v. Missouri Lottery Commission*, 463 S.W.3d 843, 849 n.12 (Mo. App. W.D. 2015).

[18]As explained in this Opinion, our reversal of the trial court's Judgment on Count II of the second amended petition does not affect the continued validity of the trial court's unchallenged findings that the Division's definition of "sexual maltreatment" in the Child Welfare Manual should have been promulgated as a rule, and should not have been relied on to find sexual abuse because it was not a promulgated rule. Thus, the trial court's Judgment in favor of Ramirez on Count I of the second amended petition remains in force and effect, and is unaffected by this Opinion.

15